FILED
CLERK

8/7/2013 11:08 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA,

                 Plaintiff,

    - against -

CARL PERRYMAN,

                 Defendants.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**

12-CR-0123 (ADS)

**A P P E A R A N C E S :**

**LORETTA E. LYNCH**
United States Attorney for the
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
By:     Thomas M. Sullivan,
        Assistant U.S. Attorney

**MATTHEW W. BRISSENDEN, P.C.**
*Attorney for the Defendant*
666 Old Country Road, Suite 501
Garden City, NY 11722
By:     Matthew W. Brissenden, Esq., Of Counsel

**SPATT, District Judge.**

On February 15, 2012, the Defendants Carl Perryman, also known as "Carl Carl" and "Sunny," ("Perryman") and Charles Sullins, also known as "Chunk," were indicted on four counts, including: (1) conspiracy to commit murder in-aid-of racketeering, in violation of Title 18, United States Code, Sections 1959(a)(5); (2) attempted murder-in-aid-of-racketeering, in violation of Title 18, United States Code, Sections 1959(a)(5) and (2); (3) assault with a

dangerous weapon in-aid-of racketeering, in violation of Title 18, United States Code, Section 1959(a)(3) and (2); and (4) discharge of a firearm during a crime of violence in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii), 924(C)(1)(A)(iii) and (2).

In substance, the Introduction to the counts charged that Perryman and Sullins were members of a Bloods street gang known as the "Old Mill Court Bloods." The Crips is a rival street gang. It was alleged that members and associates of the Old Mill Court Bloods engaged in criminal activity, such as robberies, assaults, and narcotics trafficking. In addition, it was alleged that participation in violence directed at rival gangs increased the respect accorded to the member or associate that does so.

All of the four substantive accounts related to a March 16, 2011 shooting of a person named John Doe in the indictment, alleged to be a member of the rival Crips gang.

On February 17, 2012, Perryman was arraigned and pleaded not guilty to the indictment. That same day, Sullins was arraigned and pleaded not guilty to the indictment.

On June 27, 2012, Sullins withdrew his previous plea of not guilty; entered a plea of guilty to Counts 3 and 4; and was remanded into custody.

In the interim, on June 13, 2012, Perryman made a motion for a bill of particulars to obtain disclosure of other racketeering activity, unspecified in the indictment, that he believed the Government intended to rely on at the trial. The Government opposed the motion.

On August 3, 2012, the Court denied Perryman's motion for a bill of particulars, reasoning that "the indictment clearly sets forth the four charges alleged against [Perryman]. The charges are not complicated or obscure. This is not a complex multifaceted securities fraud indictment." (Mem & Order, dated Aug 3. 2012, at 6.)

On October 29, 2012, Perryman moved for (1) the suppression of any evidence obtained by law enforcement personnel on February 17, 2012 at the residence of his mother and step-father at 21B Old Mill Court, Rockville Centre, New York; (2) the suppression of evidence obtained from a search of Perryman's mobile telephone; (3) the exclusion of those portions of private security firm surveillance video obtained by law enforcement that allegedly depict Perryman engaged in attempted murder, assault, and discharge of a firearm; (4) the exclusion of evidence related to an uncharged murder; (5) the exclusion of evidence regarding the conduct of Perryman's family members; (6) the exclusion of evidence of Perryman's possession of gang-related materials; (7) for an order compelling discovery of certain materials; and (8) for a bill of particulars. The government opposed the motion.

On January 4, 2013, the Court rendered rulings on the record and (1) set a suppression hearing for the evidence obtained at the Old Mill Court residence; (2) denied the motion to suppress evidence obtained from Perryman's mobile telephone; (3) denied the motion to exclude the surveillance video; (4) deferred ruling on the evidence related to the uncharged murder; (5) deferred ruling on the exclusion of evidence regarding the conduct of Perryman's family members; (6) deferred ruling on the exclusion of the gang-related materials; (7) deferred ruling on the motions for discovery; and (8) denied the renewed motion for a bill of particulars.

On January 28, 2013, the Court held a suppression hearing on the evidence obtained at the Old Mill Court Residence. Following the hearing, the Court denied the motion, holding that such evidence was admissible because Perryman's mother, Denish Enoch, voluntarily consented to the search of her residence.

On May 1, 2013, the Government brought a Superseding Indictment against Perryman,

charging him with (1) racketeering as defined in Title 18, United States Code, Sections 1961(1), (5); (2) conspiracy to commit racketeering in violation of Title 18, United States Code, Sections 1962(d), 1963 and 3551, *et seq*; (3) conspiracy to distribute controlled substances in violation of Title 21, United States Code, Sections 841(b)(1)(c) and 18, United States Code, Sections 3551, *et seq*; (4) attempted murder in violation of New York Penal Law Sections 125.25(1), 110.00, and 20.00 and Title 18, United States Code, Sections 1959(a)(5), and 3551, *et seq*; (5) assault with a dangerous weapon in violation of New York Penal Law 120.05(2) and Title 18, United States Code, Sections 1959(a)(3) and 3551, *et seq*; (6) discharge of a firearm during a crime of violence: attempted murder and assault in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), and 3551, *et seq*; (7) conspiracy to murder in violation of New York Penal Law Sections 125.25(1) and 105.15 and Title 18, United States Code, Sections 1959(a)(5) and 3551, *et seq.*; (8) attempted murder in violation of New York Penal Law Sections 125.25(1), 110.00, and 20.00 and Title 18 United States Code, Sections 1959(a)(5), 2 and 3551, *et seq*; (9) assault with a dangerous weapon in violation of New York Penal Law Sections 120.05(2) and 20.00 and Title 18, United States Code, Sections 1959(a)(3), 2 and 3551, *et seq.*; and (10) discharge of a firearm during a crime of violence: conspiracy to murder and attempted murder and assault in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(c)(1)(c), 2 and 3551, *et seq.*

Counts four, five, and six related to the alleged shooting of an individual on July 26, 2009 named John Bush just outside the Old Mill Apartment Complex.  In addition, the John Bush shooting served as the basis for Racketeering Act 4 in Count 1 of the Superseding Indictment.

On June 5, 2013, Perryman moved (1) to dismiss Counts 4 through 6 of the Superseding Indictment on double jeopardy grounds; (2) to suppress oral statements Perryman made to police officers regarding Counts 4 through 6 after he waived his Miranda rights; (3) for a bill of particulars; (4) for an order compelling the production of certain discovery and/or early production of Jenks Act material; (5) to preclude introduction of evidence regarding an uncharged murder for which Perryman was acquitted following a state trial; (6) to preclude the introduction of what Perryman termed "familial crimes;" (7) to exclude third-party writings recovered during the February 17, 2012 search; and (8) for an order to local law enforcement authorities directing them to comply with Local Criminal Rule 23.  The Government opposes the motion.  The Court will now address, in turn, each part of the instant motion.

## I.  DISCUSSION

A.  <u>As to Perryman's Double Jeopardy Defense</u>

Perryman moves to dismiss Counts 4, 5, and 6 – those pertaining to the attempted murder, assault, and shooting of Bush – contending that this prosecution would violate the Double Jeopardy Clause of the 5th Amendment to the United States Constitution as he was previously acquitted of state charges related to this crime.  In opposition, the Government submits that the current prosecution falls squarely within the well-established exception to the Double Jeopardy Clause, the "dual sovereignty" doctrine.  Perryman counters that the Court should reject the "dual sovereignty" doctrine as outdated, or in the alternative, should order a hearing to determine whether this case falls within the "<u>Bartkus</u>" exception to the "dual sovereignty" doctrine.

The Double Jeopardy Clause provides that no "person shall be subject for the same

offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2. " '[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Ohio v. Johnson, 467 U.S. 493, 498, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984) (quoting Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)). The purpose of the Clause is to prevent the government from " '"mak[ing] repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty.'" United States v. Podde, 105 F.3d 813, 816 (2d Cir. 1997) (quoting Green v. United States, 355 U.S. 184, 187–88, 78 S. Ct. 221, 2 L .Ed. 2d 199 (1957)). The test for determining whether two crimes constitute the same offense was set forth by the Supreme Court in Blockberg v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), where the Court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not."

Nevertheless, "a defendant in a criminal case may be prosecuted by different sovereigns for the same offense" under the doctrine of dual sovereignty. United States v. Nelson, 277 F.3d 164, 212 (2d Cir. 2002) (citing Heath v. Alabama, 474 U.S. 82, 88–89, 106 S. Ct. 433, 88 L. Ed. 2d 387 (1985) (when "a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences'")); see also United States v. Lanza, 260 U.S. 377, 382, 43 S. Ct. 141, 142, 67 L. Ed. 314 (1922) ("Each

government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.  It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.").

Relying on a number of academic articles criticizing the "dual sovereignty" doctrine, Perryman contends that the doctrine "largely eviscerates the protections that most Americans associate with double jeopardy" under the guise of federalism.  See also State v. Roach, 391 S.W.3d 8 (Mo. Ct. App. 2012), pet. for cert. filed, No. 12-1394, 2013 WL 2352238, at *2 (May 24, 2013)(requesting that the Supreme Court of the United States "restore the original scope of the Double Jeopardy Clause and abrogate the dual sovereignty doctrine.").  In Roach, the Defendant was charged separately by the state of Missouri and the federal government for the same alleged criminal conduct (i.e., being a felon in possession of a firearm).  After Roach pleaded guilty to the federal charge, the state trial court dismissed the state charge pursuant to the Fifth Amendment's Double Jeopardy Clause.  The Missouri Court of Appeals reversed the trial court's decision on the basis of the "dual sovereignty" doctrine.  However, despite the academic criticisms and legal challenges to the "dual sovereignty" doctrine, Perryman points to no binding precedent of a court rejecting this otherwise well-established principle.

Unable to break new legal ground, Perryman alternatively seeks the protection of the narrow exception to the "dual sovereignty" doctrine, known as the "Bartkus exception," which provides "[i]f the second prosecution, otherwise permissible under the dual sovereignty rule, is not pursued to vindicate the separate interests of the second sovereign, but is merely pursued as a sham on behalf of the sovereign first to prosecute, it may be subject to a successful double

jeopardy challenge." <u>United States v. Koon</u>, 34 F.3d 1416, 1438 (9th Cir. 1994) <u>affd in part, revd</u>

<u>in part on other grounds</u>, 518 U.S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996) (citing <u>Bartkus</u>

<u>v. Illinois</u>, 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959)).

Under this exception, to establish double jeopardy, a defendant must show that the

subsequent prosecution was merely "a sham and a cover for a federal prosecution." <u>Bartkus</u>, 359

U.S. at 678; <u>see</u> <u>also</u> <u>Koon</u>, 34 F.3d at 1439 (holding a defendant must demonstrate "the

subsequent prosecuting entity is a 'tool' for the first, or the proceeding is a 'sham,' done at the

behest of the prior authority" (quoting <u>United States v. Figueroa–Soto</u>, 938 F.2d 1015, 1019 (9th

Cir. 1991)).  To assert this narrow exception, a defendant bears the burden of proving that the

"state and federal prosecutions are so intertwined as to undermine the assumption that the two

supposedly independent criminal actions were prosecuted by separate sovereigns." <u>United States</u>

<u>v. Castro</u>, 659 F. Supp. 2d 415, 419 (E.D.N.Y. 2009)(Spatt, J.), <u>affd</u>. 411 F. Appx 415 (2d Cir.

2011) (quoting <u>Coonan</u>, 938 F.2d at 1563).

According to Perryman, the Government brought this case at the insistence of state and

local law enforcement agencies as retribution towards Perryman after their failed attempts to

convict him with respect to the Baez and Bush shooting.  Indeed, it appears that the federal

investigation was commenced immediately after Perryman was acquitted in the Bush shooting in

early February 2010.  Perryman also cites to a press release announcing the new RICO charges

against him.  The press release recites the facts surrounding Perryman's prior acquittals in 2009

and 2010 and then states that the Rockville Center Police Department "reached out to the FBI

and Long Island Gang Taskforce in 2010 when Charles Gennario became commissioner.  The

[Police Department] worked as a team with the FBI agents over the years to build the case, and

they are still working." (Perryman's Exh B.) The press release further states that the Rockville

Centre Police Department "worked with the FBI for three years to build a case against

[Perryman] and the other members of his gang, the Bloods." (Id.) It concludes with a quotation

from the Police Commissioner, who described Perryman as follows:

> a dangerous individual living amongst us for a long time. It was a
> top priority for our members to remove from the streets. His
> indictment certainly makes us safer. I want to commend my
> detectives and the FBI, who have worked tirelessly in bringing this
> individual to justice. It's been a long term investigation that has
> finally paid dividends.

(Id.)

However, the Second Circuit has repeatedly held that joint-cooperation between state and

federal authorities "fall[s] short of showing the sort of manipulation that could avoid the general

rule." United States v. Aboumoussallem, 726 F.2d 906, 910 (2d Cir. 1984) (explaining that

"there was here no more than a joint investigation of criminal activity, which we have held does

not preclude separate prosecutions"); United States v. Russotti, 717 F.2d 27, 30–31 (2d Cir.

1983) (finding cooperation between state and federal authorities does not preclude successive

prosecutions nor did it suggest the state murder prosecution was merely a cover for the

subsequent federal prosecution by federal authorities who were substantially involved in the

state prosecution); United States v. Ng, 699 F.2d 63, 69 (2d Cir. 1983) (explaining in "absence

of a sound basis for an inference of vindictiveness . . . the federal prosecution of a person for the

same acts forming the basis of a previous state conviction does not violate the defendant's

constitutional right to protection against double jeopardy.")

In the present case, Perryman has offered no evidence to support his claim that the

federal prosecution was a "sham" or "cover" for the state prosecution. The fact that the state

prosecution directly preceded the federal investigation and prosecution does not, by itself, qualify Perryman for the "<u>Barktus</u> exception." <u>Aboumoussallem</u>, 726 F.2d at 909–11 (finding no double jeopardy violation where federal authorities prosecuted the defendant after he was acquitted in state court on charges arising from the same conduct). Without evidence that the state authorities "acted as a tool of the federal government," Perryman cannot circumvent the "dual sovereignty" doctrine. <u>United States v. Peterson</u>, 100 F.3d 7, 12 (2d Cir. 1996)(quotation marks and citation omitted). Indeed, unlike in <u>Castro</u>, Perryman cannot even be heard to complain that the federal prosecution gained something from the preceding state prosecution – there, the defendant's guilty plea – because here, Perryman was acquitted of the state charges. Having failed to offer any evidence that the federal government effectively controlled the state prosecution, Perryman's motion to dismiss counts 4, 5, and 6 of the indictment on double jeopardy grounds or for a hearing on that issue, is denied.

B. <u>As to Perryman's Post-Arrest Statements</u>

Perryman also contends that any statements allegedly made by him to the arresting detective on August 17, 2009 while in custody were involuntary and obtained in violation of his constitutional rights. Accordingly, Perryman requests full disclosure of these statements and a hearing to determine whether or not such statements were voluntary and should be admitted at the trial.

According to the Government, on August 17, 2009, Perryman was arrested in South Carolina by Nassau County Police Detective Paul Read and Sergeant John Wheeler. The Government contends that, following the arrest, Read communicated, to Perryman his Miranda rights, which Wheeler witnessed, and which Perryman waived. The Government notes that

Perryman thereafter made several oral statements while in South Carolina, North Carolina, and Nassau County.

In the Second Circuit, "an evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005) (quotation marks omitted). Courts in this Circuit have "repeatedly" denied motions to suppress without a hearing "where defendants have failed to provide affidavits alleging facts based on personal knowledge." United States v. Larranga Lopez, 2006 WL 1307963, at *3 (E.D.N.Y. May 11, 2006) (citing cases); see also United States v. Shaw, 260 F. Supp. 2d 567, 570 (E.D.N.Y. 2003) ("[I]n the absence of an affidavit based on personal knowledge, no evidence exists to dispute the facts described by the Government."); United States v. Aparo, 221 F. Supp. 2d 359, 369 (E.D.N.Y. 2002) (denying a motion to suppress where the defendant had "not submitted an affidavit alleging facts which would require the suppression of statements if those facts were proved at a hearing."); United States v. Fruchter, 104 F. Supp. 2d 289, 308 (S.D.N.Y. 2000) ("To create a factual dispute, defendant must submit sworn factual allegations from an affiant with personal knowledge."); United States v. Simpkins, 1996 WL 629567, at *1 (E.D.N.Y. Oct. 16, 1996) ("The motion is denied on the ground that defendant has failed to provide an affidavit based on her own personal knowledge."); United States v. Brumby, 1992 WL 373686, at *3 (E.D.N.Y. Nov. 30, 1992) ("The government argues that Sanders' motions to suppress are not supported by an affidavit based on personal knowledge and therefore insufficient as a matter of law. This Court agrees.").

Here, "[Perryman] has not offered any support that his Miranda rights were violated, and

his request for a suppression hearing fails on its face." United States v. Cook, 348 F. Supp. 2d 22, 29 (S.D.N.Y. 2004). Perryman has not submitted an affidavit based upon his personal knowledge, rebutting the Government's version of events. A defendant seeking a Miranda suppression hearing must make more than, as here, a "bald assertion" that the statement in question was involuntary. United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998). More particularly, an attorney's affidavit, absent personal knowledge, is insufficient to justify a suppression hearing. See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967). Accordingly, that part of Perryman's motion to suppress his post-arrest statements and requesting a hearing is denied.

C. As to Perryman's Renewed Request for a Bill of Particulars

Perryman also contends that while the Court previously denied his motion for a bill of particulars on the original indictment, the Superseding Indictment significantly expands the scope and complexity of the charges against him. He observes that the Superseding Indictment accuses the Bloods of "acts of violence, including murder, attempted murder, robbery and assault, as well as other criminal activity, including narcotics trafficking, witness tampering, and witness retaliation." For this reason, Perryman seeks to compel the Government to produce a bill of particulars delineating any such specific acts of violence, attempted murder, robbery, assault, narcotics trafficking, witness tampering, or witness retaliation; the date and location of the alleged offense; the identity of the perpetrator and the victim; and the identity of the alleged robbery victim "John Doe 1."

"Rule 7(f) . . . permits the defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant

to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." United States v. Sattar, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) (citing United States v. Mitlof, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001)). In fact, "[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (quoting United States v. Feola, 651 F.Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd 875 F.2d 857 (2d Cir. 1989)).

"In determining whether a bill of particulars is warranted '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" United States v. Ramos, 2009 WL 602997, at *1 (S.D.N.Y. Mar. 3, 2009) (quoting United States v. Facciolo, 753 F.Supp.2d 449, 451 (S.D.N.Y. 1990)). Consistent with this principle, courts generally "deny requests for bills of particulars concerning the 'wheres, when, and with whoms' of the crime." Id. (quoting United States v. Ma, 2006 WL 708559, at *14 (S.D.N.Y. Mar. 21, 2006), and Mitlof, 165 F. Supp. 2d at 569).

A bill of particulars is merited "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (quoting United States v. Feola, 651 F.Supp. 1068, 1132 (S.D.N.Y. 1987), affd, 875 F.2d 857 (2d Cir. 1989)). Finally, "[w]hether to grant a bill of

particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

Here, while Superseding Indictment builds upon the previous indictment and interposes six additional charges, "[t]his is [still] not a complex multifaceted securities fraud indictment" (Mem & Order, dated Aug 3. 2012, at 6.) The Court finds that the Superseding Indictment, coupled with discovery and supplemented by the Government's memorandum of law on this motion, suffices to adequately inform Perryman of the nature of the charges; allow the preparation of a defense; avoid unfair surprise; and allay double jeopardy concerns. In particular, the memorandum of law delves into the evidence the Government intends to present with respect to, the Bloods "enterprise" structure; the effect of its activities on interstate commerce; the circumstances surrounding the Bush shooting; and alleged witness tampering. Accordingly, the motion by Perryman for a bill of particulars is denied.

D. As to Perryman's Motion to Compel Discovery

In addition, Perryman seeks to compel certain discovery from the Government, including (1) a witness list and any "Jenks Act" material at least 30 days prior to trial; (2) wiretap evidence in its possession relating to the alleged narcotics and RICO conspiracy from February through May 2011, as well as phone and/or text messages allegedly made by Perryman and his co-conspirators during the course of the conspiracy; and (3) any documents relating to police forensic examinations, ballistic tests, fingerprint comparisons, handwriting analysis, DNA analysis, as well as any diagrams, crime scene reports, police memorandum, or evidence vouchers generated in the course of the investigation into this matter.

1. <u>"Jenks Act" Material</u>

The Government is required to disclose statements made by its witnesses pursuant to the Jenks Act, 18 U.S.C. § 3500. However, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." <u>United States v. Nixon</u>, 418 U.S. 683, 701, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). In fact, the Jenks Act does not require disclosure prior to the completion of the direct testimony of the witness. 18 U.S.C. 3500(b); <u>see</u> <u>In re United States</u>, 834 F.2d 283, 286-87 (2d Cir. 1987) (granting mandamus to vacate order requiring production of witness statements); <u>United States v. Percevault</u>, 490 F.2d 126, 131 (2d Cir. 1974) (reversing order suppressing witnesses' testimony on the grounds that the Government did not produce witness statements in advance of the trial despite being ordered to do so).

Under Second Circuit precedent, a trial court has the discretion to compel the disclosure of the identity of government witnesses where there has been a particularized showing of need. <u>See</u> <u>United States v. Cannone</u>, 528 F.2d 296, 300-01 (2d Cir. 1975); <u>see</u> <u>also</u> <u>United States v. Vega</u>, 309 F. Supp. 2d 609, 617 (S.D.N.Y. 2004). In determining whether to exercise its discretion, the trial court needs to balance the "defendants' specific need for the material" against the "'possible dangers accompanying disclosure (i.e. subornation of perjury, witness intimidation, and injury to witnesses).'" <u>United States v. Cafaro</u>, 480 F. Supp. 511, 520 (S.D.N.Y.1979) (quoting <u>Cannone</u>, 528 F.2d at 302). To that end, district courts in this Circuit have looked to the following factors:

> (1) Did the offense alleged in the indictment involve a crime of violence? (2) Have the defendants been arrested or convicted for crimes involving violence? (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)? (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the

15

likelihood that the prosecution's witnesses will not appear at trial, or
will be unwilling to testify at trial? (5) Does the indictment allege
offenses occurring over an extended period of time, making
preparation of the defendants' defense complex and difficult? (6)
Do the defendants have limited funds with which to investigate and
prepare their defense?

United States v. Washington, 947 F. Supp. 87, 89 (S.D.N.Y. 1996) (quoting United States v.

Turkish, 458 F. Supp. 874, 881 (S.D.N.Y. 1978)); see also United States v. Rueb, No. 00 CR 91,

2001 WL 96177, at *7-8 (S.D.N.Y. Feb. 5, 2001).

In this regard, the Second Circuit has made clear that when, as here, "a defendant offers

only conclusory abstract statements as to why disclosure of the identity of the government's

witnesses is necessary, and when the government counters with specific factual allegations as to

why disclosure would be prejudicial, it is error for the trial court to grant disclosure unless the

defendant has come forth with a specific factual response." United States v. James, 02 CR 0778

(SJ), 2007 WL 914242, at *13 (E.D.N.Y. Mar. 21, 2007); see Cannone, 528 F.2d at 302

(holding that the district court "committed reversible error in sustaining without meaningful

explanation the defense's motion for pretrial discovery of the identity of the government's

witnesses despite both the presence of specific evidence of the need for concealment and the

absence of specific evidence of the need for disclosure").

Here, given the nature of the charges in this case, which include not only murder charges

but witness tampering charges as well, and given the government's representation that the

disclosure of the identities of the witness may jeopardize their safety, the Court declines to

exercise its discretion to compel disclosure of the government's witness list at this time. See

United States v. Gutierrez-Flores, No. 94 CR 393, 1994 WL 558034, at * 3 (S.D.N.Y. Oct. 11,

1994); United States v. Leonard, 817 F. Supp. 286, 301-02 (E.D.N.Y. 1992) (denying

defendant's request for a list of all government witnesses and all government informants because defendant did not make a "specific showing" of need). Also, the Court notes that the Government has agreed to "confer with defense counsel and attempt to agree on a schedule for the production of the government's Section 3500 material in advance of trial." (Gov's Brf, at 26.)

        2. Wiretap Evidence, Phone, and Text Records

        On July 9, 2013, the Government provided to Perryman all the affidavits, applications, and orders obtained in 2011 related to wiretap applications that were granted in connection with the investigation of the alleged narcotics conspiracy. As for phone and text records, the Government previously disclosed a search warrant affidavit dated February 22, 2012, for contents of Perryman's cell phone that was recovered pursuant to a consent search of his mother's apartment on February 17, 2012. On July 9, 2013, in a supplemental discovery letter, the Government provided Perryman with a disk containing all the data recovered from the telephone pursuant to that search warrant. Further, in the same letter, the government provided Perryman with copies of the pen register applications and orders pertaining to a telephone number used by Perryman. In light of these disclosures, the Court denies as moot that part of Perryman's motion to compel discovery of wiretap evidence and phone and text records.

        3. Forensic Evidence and Crime Scene Reports

        In a discovery letter dated May 17, 2013, the Government provided Perryman with property receipts and laboratory reports for various quantities of cocaine base, marijuana, and ammunition recovered incident to the arrest of Charles Parsley, an alleged member of the enterprise, that will be offered in evidence in connection with the charged RICO conspiracy.

On July 9, 2013, Perryman was provided with a crime scene investigation report and 18 crime scene photographs regarding the shooting of Bush; a DNA analysis report dated September 8, 2009; and a latent fingerprint report dated July 27, 2009.

With respect to the attempted murder of John Doe #3, the Government has provided a copy of the crime scene examination report and 29 photographs of the crime scene of Morgan Days Park in Old Mill Court, Rockville Centre. These include photographs of shell casings and an unfired round recovered at the scene. In his reply memorandum, Perryman does not dispute that these materials were turned over, nor does he contend that the Government is obligated to turn over further materials. Accordingly, the Court denies as moot that part of Perryman's motion to compel discovery of forensic evidence and crime scene reports.

E. As to the Perryman's Motion to Preclude Evidence of Uncharged Offenses

Perryman also renews his motion to preclude evidence relating to the alleged murder of David Baez in May 2009, including newspaper clippings found in the bedroom where Perryman was arrested. Perryman emphasizes that the Government has not charged this shooting as a racketeering act in the Superseding Indictment, "presumably because the purported motive behind the alleged shooting was personal, and not related to the affairs of the alleged racketeering enterprise." (Id. at 11-12). According to Perryman, this "propensity evidence" should be excluded under Federal Rules of Evidence 403 and 404(b).

In opposition, the Government contends that after Perryman was acquitted of the charge of the murder of Baez, two of the prosecution witnesses pled guilty to perjuring themselves when they offered favorable testimony to Perryman at the trial. The Government asserts that one of those witnesses is now prepared to testify that he perjured himself in favor of Perryman only

after being threatened by members of the Old Mill Court Bloods.  In addition, the Government states that another witness will testify that he intentionally omitted facts and provided a false alibi for Perryman in connection with the state prosecution of the Bush shooting.  Finally, the Government contends that it will offer evidence of the 2010 murder of Sandra Hackley, th ex-girlfriend of an Old Mill Court Bloods drug supplier, and Perryman's efforts to collect money promised for this contract killing.

The Court finds that where, as here, the existence of a racketeering enterprise is at issue, evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible "to prove an essential element of the RICO crimes charged – the existence of a criminal enterprise in which the defendants participated." U.S. v Matera, 489 F.3d 115, 120 (2d. Cir 2007) (upholding admission of evidence of uncharged murders); United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999) ("Where . . . the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.")(internal quotation marks omitted)); United States v. Miller, 116 F.3d 641, 682 (2d Cir.1997) (uncharged acts are admissible to prove the existence of the RICO enterprise alleged in the indictment); United States v. Thai, 29 F.3d 785, 812–13 (2d Cir.1994) (uncharged acts are admissible as evidence of "the existence and structure of the [RICO] enterprise"); United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (evidence of uncharged acts of extreme violence by members of a RICO enterprise "was certainly probative of the existence of the charged enterprise").

Moreover, the Second Circuit has recognized that "[w]hen a defendant engages in a criminal enterprise which involves very serious crimes, there is a likelihood that evidence

proving the existence of the enterprise through its acts will involve a considerable degree of prejudice. Nonetheless, the evidence may be of important probative value in proving the enterprise." <u>Matera</u>, 489 F.3d at 121. Thus, the Court denies the motion to preclude evidence of uncharged offenses, with the caveat that the Government limit the potential prejudicial impact of this evidence at trial, whether through redactions or other means, and subject to the Court's future rulings at the trial. As the Government notes, "[o]ne possible means may to be avoid specific reference to the nature of the charges that were pending against [Perryman]." (Gov's Mem, at 31.)

F.  <u>As to the Perryman's Renewed Motion to Preclude Evidence of Familial Crimes</u>

Perryman also renews his motion to exclude any evidence relating to crimes committed by his brothers – Kasaun White and James Rutledge – because such evidence would prejudice Perryman through "guilt by association." The Government has previously represented to the Court that it will not seek to introduce such evidence except to the extent it involves a coconspirator statement.

In the Court's view, it is not clear what, if any, evidence the Government intends to introduce in this regard. Accordingly, the Court defers ruling on this part of Perryman's motion.

G.  <u>As to Perryman's Renewed Motion to Exclude Hearsay Writings</u>

Perryman also renews his motion to exclude hearsay writings obtained from Enoch's apartment as irrelevant and unduly prejudicial. In opposition, the Government asserts that Perryman offers no legal basis to summarily exclude this evidence at this time regardless of whether the writing at issue was authored by Perryman. <u>United States v. Birney</u>, 686 F.2d 102, 106 (2d Cir. 1982)("To avoid acting arbitrarily a trial court applying Rule 403 must make a

'conscientious assessment' of whether unfair prejudice substantially outweighs probative value.")(citation omitted).

Again, because the nature of the subject evidence is unclear at this time, the Court deems this aspect of Perryman's motion premature and more appropriately reserved for a motion in limine during the trial. That said, the Court grants Perryman's request that the Government be required to identify the specific documents it intends to introduce in this regard at least 30 days prior to the trial, thereby affording Perryman sufficient time to submit such documents to a handwriting expert.

## H. As to Perryman's Motion for an Order Pursuant to Local Criminal Rule 23.1

Finally, Perryman contends that personnel within the Rockville Centre Police Department ("RVCPD") have made a series of comments about his character and reputation in the community, as well as the strength of their case, all of which are inappropriate under Local Criminal Rule 23.1. In light of these comments, Perryman seeks an order directing the Government and its partners in local law enforcement to comply with Local Rule 23.1 and to remove the public comments which are currently posted on its website.

Southern/Eastern District of New York Local Criminal Rule 23.1, entitled Free Press–Fair Trial Directives sets forth similar requirements and provides that:

(a) It is the duty of the lawyer or law firm, and of non-lawyer personnel employed by a lawyer's office or subject to a lawyer's supervision, private investigators acting under the supervision of a criminal defense lawyer, and government agents and police officers, not to release or authorize the release of non-public information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

(b) With respect to a grand jury or other pending investigation of any criminal matter, a lawyer participating in or associated with the investigation (including government lawyers and lawyers for targets, subjects, and witnesses in the investigation) shall refrain from making any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers or otherwise to aid in the investigation, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the administration of justice.

(c) During a jury trial of any criminal matter, including the period of selection of the jury, no lawyer or law firm associated with the prosecution or defense shall give or authorize any extrajudicial statement or interview relating to the trial or the parties or issues in the trial which a reasonable person would expect to be disseminated by means of public communication if there is a substantial likelihood that such dissemination will interfere with a fair trial; except that the lawyer or the law firm may quote from or refer without comment to public records of the court in the case.

(d) Statements concerning the following subject matters presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of this rule:

. . .

(6) Information the lawyer or law firm knows is likely to be inadmissible at trial and would if disclosed create a substantial likelihood of prejudicing an impartial trial; and

(7) Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case.

. . .

(I) Any lawyer who violates the terms of this rule may be disciplined pursuant to Local Civil Rule 1.5.

Local Criminal Rule 23.1 (Last Updated May 26, 2009).

In this regard, the Department of Justice, which encompasses the Federal Bureau of

Investigation, "has issued guidelines to it employees governing trial publicity. . . . DOJ employees are permitted only to release identifying information regarding the defendant, the substance of the charges, the identity of the investigating agency and the circumstances immediately surrounding an arrest." Elkan Abramowitz and Barry A. Bohrer, White Collar Crime, Pretrial Publicity in Criminal Cases: Media Sound Bites, Justice?, N.Y.L.J. (January 6, 2009) (citing 28 C.F.R. 50.2). The regulation provides that "[d]isclosures should include only incontrovertible, factual matters, and should not include subjective observations." 28 C.F.R. 50.2(b)(3). Further, the regulation cautions that DOJ personnel should refrain from making "[a]ny opinion as to the accused's guilt, or the possibility of a plea of guilty to the offense charged, or the possibility of a plea to a lesser offense." 28 C.F.R. 50.2(b)(6)(iv).

Here, Perryman notes that on the RVCPD website, police officers are quoted as calling Perryman "the worst of the bunch." The release then discusses Perryman's prior arrests. RVCPD Lieutenant James Vafeades is quoted as emphasizing the strength of the instant case, and opining that "many of the guys we arrested are never going to get out." Likewise, in the February 23, 2012 online edition of the Long Island Herald, Lieutenant Vafeades is quoted as telling reporters: "While we were making arrests, numerous residents [of Old Mill Court] came up and thanked us because they feel like a cloud was removed from there. And over the course of the past three years, we've been told that people were afraid to come forth because of the threat of violence from [Perryman]."

"These statement may violate the disciplinary rules by offering opinions as to Corbin's guilt. In ruling in this criminal case, it is not my obligation to determine such matters involving the Rules of Professional Conduct. Instead, it is the Court's obligation to determine whether the

press release has compromised this criminal proceeding and the future trial." <u>United States v.</u>
<u>Corbin</u>, 620 F. Supp. 2d 400, 411 (E.D.N.Y. 2009).

Furthermore, "[t]he Court finds that [Perryman] has not shown that the press release has
so permeated the public as to have hindered the ability of the Court, probably some six months
or more from now, to impanel a fair and impartial jury in this case, especially in light of the size
of the jury pool in this huge district and the searching and mitigating tools available to ensure a
fair and impartial jury." <u>Id.</u>

That said, Perryman's requests in this regard are relatively modest, particularly that part
of the motion directing the RVCPD to remove the above-mentioned comments that are currently
posted on its website. Thus, the Court grants that part of the motion.

The Government assures the Court that, going forward, it "will take [the] necessary steps
to avoid further pre-trial publicity of this matter by communicating to local officials Rule 23.1."
(Gov's Mem, at 34.) Given this representation, the Court denies as moot that part of Perryman's
motion seeking an order directing the Government and its partners in local law enforcement to
comply with Local Criminal Rule 23.1. In this respect, the Government appears to be complying
with the Rule.

## II. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Perryman's motion to dismiss Counts 4 through 6 of the Superseding
Indictment on double jeopardy grounds is denied; and it is further

**ORDERED**, that Perryman's motion to suppress oral statements that he made to police

officers regarding Counts 4 through 6, after he waived his Miranda rights, is denied; and it is further

**ORDERED**, that Perryman's motion for a bill of particulars is denied; and it is further

**ORDERED**, that Perryman's motion for an order compelling production of certain discovery and/or early production of Jenks Act material is denied; and it is further

**ORDERED**, that Perryman's motion to exclude evidence regarding uncharged offenses is denied, provided the Government limit the prejudicial impact of this evidence at the trial; and it is further

**ORDERED**, that a ruling on Perryman's motion to preclude evidence of familial crimes is deferred at this time; and it is further

**ORDERED**, that a ruling on Perryman's motion to exclude certain writings as hearsay is deferred at this time, except to the extent the Court grant's Perryman's request that the Government **is** required to identify the specific documents it intends to introduce in this regard at least 30 days prior to trial, thereby affording Perryman sufficient time to submit such documents to a handwriting expert; and it is further

**ORDERED**, that Perryman's motion for an order pursuant to Local Criminal Rule 23.1

is denied, except to the extent that the RVCPD is directed to remove the above-mentioned comments which are currently posted on its website.

**SO ORDERED.**
Dated: Central Islip, New York
     August 7, 2013

              ___*Arthur D. Spatt*_____
                 ARTHUR D. SPATT
            United States District Judge