UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
CARL PERRYMAN,

                Petitioner,

   -against-

UNITED STATES OF AMERICA,

                Respondent.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
15-cv-02983 (JMA)
12-cr-00123 (JMA)

**FILED**
**CLERK**

3:01 pm, Dec 09, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

Joseph J. Ferrante
Keahon, Fleischer & Ferrante
1393 Veterans Memorial Highway
Suite 312 North
Hauppauge, NY 11788
   *Attorney for Petitioner*

Breon Peace
   United States Attorney
Grace M. Cucchissi
Charles N. Rose
   Assistant United States Attorneys
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
   *Attorneys for the United States*

**AZRACK, United States District Judge:**

Currently before the Court is a petition filed by Carl Perryman ("Perryman" or the "Petitioner") to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. (*See* Motion to Vacate, ECF No. 1[1] (the "Petition")). The government objects.

---

[1] Unless otherwise noted, the ECF Numbers refer to the civil docket, 15-cv-02983.

(Government's Response Brief in Opposition ("Gov't Resp."), ECF No. 6.)  For the reasons set forth below, the Petition is **DENIED**.

## I.     BACKGROUND

Petitioner entered into a plea agreement in which he agreed to plead guilty to three counts of a ten-count superseding indictment—Count Five, assault with a dangerous weapon of John Doe #2 in violation of 18 U.S.C. 1959(a); Count Six, discharge of a firearm during crimes of violence: attempted murder and assault of John Doe #2 in violation of 18 U.S.C. 924(c); and Count Nine, assault with a dangerous weapon of John Doe #3 in violation of 18 U.S.C. 1959(a).  (Gov't Response at 2; ECF No. 6-1, Plea Agreement.)  The conduct was related to Petitioner's membership in the Old Mill Court Bloods, a set of the Bloods street gang.  (See ECF No. 6-4, Aug. 16, 2013 Plea Transcript at 28:16-29:1; Docket 12-cr-123, ECF No. 51, the "Superseding Indictment".)  In the plea agreement, the government estimated that the Petitioner faced a range of imprisonment of between 308 to 355 months.  (Plea Agreement at ¶ 2.)  The Petitioner agreed not to file an appeal, or otherwise challenge by habeas petition, his conviction or sentence in the event the Court imposed a term of imprisonment of "355 months or below."  (Id. at ¶ 4.)  On August 16, 2013, Perryman pled guilty Counts Five, Six, and Nine before the late Hon. Arthur D. Spatt.  (See Docket 12-cr-123, ECF No. 67; see also ECF No. 6-4, Plea Transcript.)  On June 27, 2014, following a Fatico hearing, in which one of Perryman's victims, John Bush (John Doe #2), testified regarding the injuries he sustained when Perryman shot him, Judge Spatt sentenced Perryman to 190 months imprisonment, 5 years of supervised release, and a $300 special assessment.  (See Docket 12-cr-123, ECF Nos. 88, 90, 92.)  Perryman did not appeal his conviction or sentence.

On May 18, 2015, Perryman filed the instant Petition, pro se, arguing that, as a matter of law, his counsel at the time of his plea and sentencing, Matthew W. Brissenden, was ineffective in

2

failing to object to certain Sentencing Guidelines calculations underlying his sentence and an alleged breach of the plea agreement by the government. (Petition at 4-15.) The government filed an opposition and Petitioner filed a reply. (ECF Nos. 6, 7.) On June 17, 2016, Randi Chavis of the Federal Defenders, filed a notice of appearance and a letter requesting that the Court not rule on Perryman's Petition until after Petitioner had the opportunity to supplement the motion in light of the Supreme Court's ruling in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015) regarding Section 924(c). (ECF Nos. 8, 9.) On April 16, 2019, Mr. Chavis filed a letter stating that Petitioner was awaiting a decision from the Supreme Court in <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), in order to determine whether he would amend the Petition to add a <u>Johnson</u> claim. (ECF No. 15.)

On June 29, 2020, this case was reassigned to the undersigned and on January 5, 2021, the Court requested a status report from Petitioner's new counsel, Joseph Ferrante. (Electronic Order, January 5, 2021.) On January 18, 2021, Mr. Ferrante filed a letter informing the Court that Perryman would not be filing an amended petition to include a <u>Johnson</u> claim because "it does not appear that recent caselaw favors his arguments." (ECF No. 21.) Accordingly, the Petition is now fully briefed and ripe for a decision from this Court.

## II.     DISCUSSION

### A. Applicable Law

Section 2255 permits a prisoner in custody to move to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To merit relief under Section 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that

constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citation omitted). The petitioner must also show that the constitutional error had "substantial and injurious effect" that caused "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks and citation omitted)

In general, a § 2255 motion is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 164–66 (1982). Thus, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted). However, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003); see also Rodriguez v. United States, No. 13-CR-85, 2021 WL 4078621, at *6 (E.D.N.Y. Sept. 8, 2021).

To prevail on an ineffective assistance claim, a petitioner must establish: (1) that "counsel's representation fell below an objective standard of reasonableness . . . under prevailing norms;" and (2) having suffered prejudice as a result of defense counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 692 (1984). Under the first prong, the court must "eliminate the distorting effects of hindsight," "evaluate the conduct from counsel's perspective at the time," and

4

"indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." Id. at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Strickland, 466 U.S. at 694). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the [petitioner] makes an insufficient showing on one" of the Strickland prongs. Strickland, 466 U.S. at 697. "The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

### B. Waiver

"Waivers of the right to appeal a sentence are presumptively enforceable." United States v. Arevalo, 628 F.3d 93, 98 (2d Cir. 2010). Waivers are found to be unenforceable "only in very limited situations, 'such as when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence.'" Id. (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000) (internal quotation marks and citation omitted)).

The government argues that Petitioner's motion is barred by the collateral attack waiver in the plea agreement. (Gov't Resp. at 9-11.) Petitioner received a sentence of 190 months—165 months below the waiver provision. Petitioner argues that the waiver is unenforceable because: "I

5

never knowingly and voluntary[i]ly signed the agreement with the understanding that if the Probation Department raised my Offense level which it did by 5 levels, then the government can move to further increase my Offense level at will or argue for another new enhancement (Life threatening injuries)." (Petitioner's Reply at 2-3.)

A review of the transcript of the plea hearing before Judge Spatt provides no basis for an argument that the waiver was not knowing or voluntary. During the plea hearing, Petitioner agreed to waive his right to appeal or collaterally attack his conviction and sentence if the Court sentenced him to a term of 355 months in prison or less. (Plea Transcript at 26:4-17.) Judge Spatt specifically addressed the terms and effect of the waiver, explaining that he was giving up his rights to any further challenge. Id. (explaining to Petitioner that "if I sentence you to 355 months or less, you cannot appeal that sentence."). Petitioner, under oath, affirmed that he understood the terms of the agreement including the waiver. (See id. at 26:4-17.)

Petitioner also seems to argue that the waiver is unenforceable because the government allegedly breached the plea agreement at sentencing—which is also an underlying basis for his claim of ineffective assistance of counsel discussed infra. (Reply 2-3.) The Court agrees that the appeal waiver does not bar its consideration of the issue of whether the government breached the plea agreement. See United States v. Baig, 654 F. App'x 26, 28 (2d Cir. 2016) ("[t]he appeal waiver does not bar [the Court's] consideration of this issue [whether the government breached the plea agreement at sentencing] because if the government breached the plea agreement, [Petitioner's] waiver of appellate rights is unenforceable."); see also Gomez-Perez, 215 F.3d at 319 ("In some cases, a defendant may have a valid claim that the waiver of appellate rights is unenforceable, such as when . . . when the government breached the plea agreement."). Although the Court finds, for the reasons below, that the government did not breach and the appeal waiver

6

would be enforceable as to Petitioner's other ineffective assistance claims, the Court considers each argument on the merits and for the reasons discussed below, Perryman's Petition fails on the merits.

### C. Merits

Petitioner asserts that Mr. Brissenden failed to provide effective counsel by failing to object to the government's alleged breach of the plea agreement at sentencing and certain Sentencing Guidelines calculations. Specifically, Petitioner argues that his counsel should have objected to: (1) the government's alleged breach of the plea agreement at sentencing by arguing for a seven-level increase in his offense level for Count Five; (2) the inclusion of his criminal conviction for attempted marijuana possession in his criminal history; and (3) the inclusion of his conviction for robbery in his criminal history.

#### 1. Alleged Breach of Plea Agreement

Perryman argues that the government breached the plea agreement by arguing for a seven-level increase of Perryman's offense level for permanent or life-threatening injury to victim John Bush (John Doe #2) with respect to Court Five, and that counsel was constitutionally ineffective for failing to argue such a breach at sentencing. (Petition at 6-11.)

##### i. *Background*

The plea agreement estimated that Petitioner's Guideline range would be 308-355 months incarceration and that the base level offense for Count Five would be 33 plus a two-level increase for serious bodily injury. (Plea Agreement at ¶ 2.) The agreement also includes a provision stating that "[t]he Guidelines estimate set forth in paragraph 2 is not binding on the [United States Attorney's] Office, the Probation Department, or the Court. If the Guidelines offense level advocated by the Office or determined by the Probation Department or the Court, is, for any reason,

7

including an error in the estimate, different from the estimate the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached the agreement." (Id. at ¶ 3.) It also states that "based upon information now known to the [United States Attorney's] Office, it will take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and make no motion for an upward departure under the Sentencing Guidelines." (Id. at ¶ 5.)

On January 30, 2014, Petitioner's counsel filed objections to the presentence investigation report ("PSR") arguing that the PSR and the government's Sentencing Guidelines estimate set forth in the plea agreement for the two assault counts (Counts Five and Nine) was incorrect because the Supreme Court's decision in United States v. McCall, 915 F.2d 811 (2d Cir. 1990) mandated the application of the aggravated assault base offense level set forth in Section 2A2.2 (a base level of 14) rather than the government's estimate of the higher Section 2A2.1(a) for attempted murder (a base level of 33). (Docket 12-cr-123, ECF No. 70 at 8.) Petitioner's counsel also objected to the PSR's "characterization of Mr. Bush's injuries as 'life threatening'." (Id. at 6.)

Probation then filed an addendum to the PSR which adopted defense counsel's argument that the proper base level offense should be 14 for aggravated assault, not 33 for attempted murder. Probation also recommended a five-level enhancement pursuant Section 2A2.2 for Count Five based on "serious bodily injury"[2] and a two-level enhancement for more than minimal planning. (ECF No. 1-2 at 17-18.)

In its sentencing memorandum, the government argued that the base level offense should be for aggravated murder (33), and if the Court adopted Probation's finding that the proper base

---

[2] Pursuant to Section 2A2.2, for "serious bodily injury" there is an increase of 5 levels and for "permanent or life-threatening bodily injury" there is an increase of 7 levels. Pursuant to Section 2A2.1, for "serious bodily injury" there is an increase of 2 levels and for "permanent or life-threatening bodily injury there is an increase of 4 levels.

8

offense level was for aggravated assault (14), then the "base offense level for the Bush shooting should be enhanced by 7-levels for causing permanent or life-threatening injury" as opposed to the five-level increase in the PSR addendum. (Docket 12-cr-123, ECF No. 73 at 7-9.) The government argued that its position was consistent with the plea agreement's provision that if the Sentencing Guidelines advocated by the Office differed from the estimate in the agreement for any reason, "the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement." (Id.; Plea Agreement at ¶ 5.)

On April 3, 2014, defense counsel then submitted a sentencing memorandum which argued that the government was in breach of the plea agreement by advocating for a sentence greater than that recommended by U.S.S.G. § 2A2.2. See ECF No. 75 at 3-6 ("the Government has asked this Court to rely upon 3553(a) factors in order to impose a non-Guidelines sentence *greater than* that recommended by U.S.S.G. § 2A2.2. [] The Government is incorrect, because this is *not* what they promised to the Defendant in exchange for his plea. Prosecutors *did not* represent that they would seek a sentence of 308-355 months incarceration *regardless* of what the law or the applicable Guidelines provide . . . Accordingly, it would appear that the Government is intentionally disregarding its clear legal obligations, imposed by a plea agreement of its own drafting."). Additionally, defense counsel, again, argued that for Count Five, Petitioner's base offense level should be for aggravated assault based on McCall, and that the five-level enhancement should apply based on the evidence of the victim's injuries including the medical records. (Id.)

At sentencing, Judge Spatt adopted Probation's recommendation and defense counsel's position that a base level-offense of 14 applied for Count Five. (Sentencing Transcript at 63.) With regard to the enhancement for Bush's injuries, defense counsel continued to argue at sentencing that it should be a serious bodily injury enhancement. After conducting a Fatico hearing

9

on the issue, at which Bush testified regarding the extent of his injuries, Judge Spatt found that a seven-level enhancement for life-threatening injuries was warranted. (Id. at 63.) Ultimately, Judge Spatt found Petitioner's Guidelines to be 190-207 months and sentenced him to 190 months incarceration.

  ii. *Analysis*

"To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement . . . Moreover, because plea bargains require defendants to waive fundamental constitutional rights, prosecutors are held to meticulous standards of performance." United States v. Vaval, 404 F.3d 144, 152–53 (2d Cir. 2005) (internal quotations omitted). The Second Circuit has held that "[r]ecognizing that a Guidelines estimate in a plea agreement, sometimes called a Pimentel estimate, is an estimate subject to 'mistakes, oversights, or new information, . . .' the Government does not violate a defendant's reasonable expectations simply because it deviates from the [Pimentel] estimate.'" United States v. Taylor, 961 F.3d 68, 82 (2d Cir. 2020) (quoting United States v. Wilson, 920 F.3d 155, 163 (2d Cir. 2019)). However, a defendant's reasonable expectations "may be breached [] where the Government's deviation produces serious unfairness for the defendant." Wilson, 920 F.3d at 163 (internal citations omitted). "Serious unfairness may be found, even if the government did not act in bad faith, if 'the Government's change of position (without new justifying facts) changed the defendant's exposure so dramatically as to raise doubts whether the defendant could reasonably be seen to have understood the risks of the agreement.'" Taylor, 961 F.3d at 82 (internal citations and quotations omitted).

Petitioner argues that the government breached the provision of the plea agreement in which the government agreed to "make no motion for an upward departure under the Sentencing

Guidelines" when the government argued for a seven-level enhancement for life-threatening bodily injury. The government takes the position that it did not breach but was rather making an argument consistent with the plea agreement's provision that if the Sentencing Guidelines advocated by the Office differed from the estimate in the agreement for any reason, "including error in the estimate . . . the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement." (Gov't Response at 6-7, 17-19.)

First, the Court agrees that the government did not breach the plea agreement. The government's request for an enhancement for life-threatening injuries rather that serious bodily injury for Count Five did not violate defendant's reasonable expectations. See United States v. Callahan, No. 13-CR-00453, 2020 WL 108452, at *5 (E.D.N.Y. Jan. 9, 2020) (finding that the government did not breach where "it is apparent that [defendants] had no reasonable expectation that they would receive the particular sentence they desired in light of the plea agreements' reservation that the Government may revise its estimate 'for any reason.'"); United States v. Habbas, 527 F.3d 266 (2d Cir. 2008) (finding that government did not breach plea agreement by supporting a four-level sentencing increase based on defendant's leadership role that was not in estimate in plea agreement where plea agreement clearly stated that sentencing estimate was not binding on prosecution or the court). Moreover, the government's position certainly did not change "the defendant's exposure so dramatically as to raise doubts whether the defendant could reasonably be seen to have understood the risks of the agreement." Wilson, 920 F.3d at 163. Rather, to the contrary, the Petitioner's offense level for Count Five ended up being significantly lower than what the government had estimated in the plea agreement and Judge Spatt found that the proper adjusted Guidelines for all counts, 190-207, were considerably lower than those

11

originally estimated in the plea agreement, 308-355. The government supported the seven-level enhancement in the context of the already much lower base level offense and Guidelines sentence.

Even assuming that the government did somehow breach the plea agreement, Perryman cannot show that counsel's performance was deficient or that he was prejudiced in anyway. In the sentencing memorandum defense counsel did, in fact, argue that the government was breaching the plea agreement by advocating for a sentence higher than that recommended by Section 2A2.2. (See Def. Sentencing Memorandum at 10 ("we are respectfully asking the Court to require specific performance of the plea agreement, which mandates that the Government be precluded from seeking an above-Guidelines sentence, or engaging in the type of aggressive sentencing advocacy prohibited . . ."); id. at 3 ("the Government has asked this Court to rely upon 3553(a) factors in order to impose a non-Guidelines sentence greater than that recommended by U.S.S.G. § 2A2.2 . . . it would appear that the Government is intentionally disregarding its clear legal obligations, imposed by a plea agreement of its own drafting."). Furthermore, counsel vigorously argued, in his objections to the PSR, sentencing memorandum, and at sentencing itself, that Perryman's offense level for Count Five should be 14 pursuant to Section 2A2.2 and that he should receive a five-level enhancement for bodily injury. Following defense counsel's advocacy, the Court determined that this lower base offense level applied. After hearing counsel's arguments and conducting a Fatico hearing, the Court ultimately found that the seven-level enhancement was warranted. Counsel's performance was certainly a far from the type of ineffective assistance of counsel that would warrant habeas relief. Finally, Petitioner clearly cannot show that he was prejudiced in anyway because counsel raised the issue of the enhancement to Count Five multiple times in his briefing and at sentencing, and Judge Spatt made the enhancement findings only after a Fatico hearing.

Because the government did not breach the plea agreement, and furthermore, because Petitioner cannot show that counsel's performance was deficient or that he was prejudiced in anyway, Petitioner cannot sustain his ineffective assistance claim on this argument.

2.  Conviction for Marijuana Possession

Second, Perryman argues that he was denied effective assistance of counsel because counsel did not object to the inclusion of Perryman's March 20, 2010 attempted criminal possession of marijuana conviction in calculating his criminal history category. (Petition at 3-6.) Perryman argues that he should not have received any criminal history points as a result of this prior marijuana conviction because it was "part of the instant offense" and thereby resulted in double counting of conduct that was already used to determine his offense level for the assault counts. (Id.) Perryman seems to argue that the marijuana conviction was used to determine the offense level as well as his criminal history and that this amounts to improper "double counting". (Id.)

The government explains that this argument is factually incorrect—this prior marijuana conviction was used to determine Petitioner's criminal history category but was not used to establish his offense level under the Guidelines. (See Gov't Response at 14-16.) Although the Superseding Indictment alleged that the Old Mill Court Bloods engaged in "narcotics trafficking," the government explains that the government nor the PSR suggested that the 2010 attempted possession conviction amounted to the type of "narcotics trafficking" alleged in the Superseding Indictment. (Id.)

Moreover, counsel did object to references in the PSR to narcotics trafficking. (ECF No. 6-3, Sentencing Transcript at 22:4-23:10.) At sentencing Judge Spatt asked the government: "Is there an effort to enhance [Perryman's] sentence" because of the cocaine trafficking allegations in

13

the Superseding Indictment and PSR, to which the government responded, "No, I don't think there is, your Honor. I think that, again, though the underlying offense here of the racketeering activity, I would just reiterate what I said earlier: It is all part of that." (Id. at 23:11-18.) Judge Spatt did not strike the references from the PSR because "it is not going to affect his sentence." (Id.)

Therefore, Perryman clearly fails to establish that counsel's performance was deficient or that he was prejudiced in anyway. Accordingly, Petitioner cannot sustain his ineffective assistance claim on this argument.

### 3. Conviction for Robbery

Finally, Perryman argues that he was denied effective assistance of counsel because counsel did not object to the inclusion of his conviction for robbery in the second degree, which he committed when he was fifteen years old, in calculating his criminal history category. (Petition at 12-14.) Perryman argues that he should not have received two criminal history points for this conviction because he was released outside the five-year timeframe contemplated by Section 4A1.2(d)(2)(A) of the Sentencing Guidelines. See U.S.S.G. § 4A1.1(b) ("add 2 points for each prior sentence of imprisonment of at least sixty days"); U.S.S.G. § 4A1.2(d)(2)(A) (for offenses committed prior to age eighteen "add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense"). The government argues that Petitioner is factually incorrect. (Gov't Resp. at 19-23.) The Court agrees.

According to the PSR, Petitioner was originally adjudicated for the robbery as a youthful offender and later resentenced as an adult. (ECF No. 1-2 at 13.) On April 22, 2001, Petitioner, who was fifteen years old, was arrested for robbery in the second degree. (Id.) On August 10, 2001, Petitioner was sentenced to five years probation. (Id.) On June 3, 2004, his probation was

revoked and he was resentenced to one year in custody. (Id.) According to the jail records that the government attached to their opposition, Petitioner was then released from jail on August 27, 2004. (ECF No. 6-5.) The federal counts of conviction to which the Petitioner pled guilty occurred on July 26, 2009 and March 16, 2011. (See Plea Transcript, 3:23-4:13.) Therefore, Perryman's release from confinement falls within the five-year period and was properly counted in his criminal history category calculation as mandated in U.S.S.G. Section 4A1.1(b) and 4A1.2(d)(2)(A).

Because the criminal history category calculation was correct, Perryman clearly fails to establish that counsel's performance was deficient or that he was prejudiced in anyway. Accordingly, Petitioner cannot sustain his ineffective assistance claim on this argument.

### III.  CONCLUSION

For the reasons set forth above, Petitioner's motion is **DENIED**. It is further ordered that the Clerk of the Court mark the civil case, Case No. 15-CV-2983, closed.

The Court declines to issue a certificate of appealability because Petitioner has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated:  December 9, 2021
          Central Islip, New York

                                                        /s/ (JMA)
                                                      JOAN M. AZRACK
                                                      UNITED STATES DISTRICT JUDGE